**ROGERS v. CONTINENTAL CASUALTY CO.**

.Civ. No. 2963.

United States District Court
W. D. Louisiana, Opelousas Division.

Jan. 22, 1951.

Mouton & Mouton, Lafayette, La., for plaintiff.

Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant.

PORTERIE, District Judge.

This is a suit filed for the recovery of allegedly excessive and exorbitant premiums of workmen's compensation, paid under a policy issued by defendant to plaintiff, for the sum of $8,622.42.

Since the institution of suit that portion of the insurance premium covering contracts executed by plaintiff for Gulf States.

Utility Company and other parties was refunded under the terms of the contract. Plaintiff paid the insurance premium on contracts amounting to $14,062.52 for which no refund has been made.

The plaintiff paid the short term cancellation of the insurance contract with defendant company in the sum of $2,575.00 and was not reimbursed by anyone.

The premium rate of $19.095, as charged by defendant on payroll of $14,062.52, amounted to the sum of $2,685.24.

The premium rate of $7.718 on payroll of $14,062.52 amounted to the sum of $1,085.35, leaving a differential between the two rates of $1,599.89. This $1,599.89 added to $2,575.00, the short term cancellation rate, amounts to $4,174.89.

The plaintiff has reduced the amount of his claim from $8,622.42 to $4,174.89, for the reason that the difference in those amounts was refunded to him on contracts performed by him.

By and through the pleadings the defendant admitted (a) it carried workmen's compensation insurance for plaintiff for the period from July 15, 1947 to July 15, 1948, at a rate of $6.469; and, (b) it issued its workmen's compensation policy for plaintiff for the period from July 15, 1948, to July 15, 1949, at a rate of $6.469, and that effective August 1, 1948, the rate was raised by authority of the Louisiana Casualty Rating Commission to the sum of $7.718.

The increase in rate as of August 1st, patently, was caused by the fact that the maximum weekly payments were increased from $20.00 to $30.00.

The defendant company cancelled the workmen's compensation policy it had written for plaintiff to cover the period from July 15, 1948, to July 15, 1949, and on the same date the policy was rewritten by it for plaintiff at a premium rate of $19.095, two and one-half times the rate of the cancelled policy. The allegation in plaintiff's complaint is that this action was taken on September 28, 1948, and defendant in its answer sets forth that the policy was not written until October 4, 1948, although it was made effective as of September 28, 1948, by oral binder.

The following are the substantial facts leading to the cancellation of the former contract and to the alleged new contract at the much higher rate.

Shortly after defendant's policy WC–4657570 was issued to plaintiff, on July 15, 1948, one of plaintiff's employees had a serious injury, which resulted in a $20,000 loss. There were during this short period five other accidents of lesser magnitude. The defendant company concluded to terminate the coverage.

On September 8, 1948, defendant's general agents, Emery & Kaufman, of New Orleans, sent H. H. Prescott & Sons a telegram informing Prescott of the company's desire to cancel plaintiff's policy WC–4657570. This telegram was received by Prescott, who notified the plaintiff of its contents no later than two or three days thereafter. Plaintiff knew, no later than September 11, 1948, that the defendant intended to cancel his policy. Plaintiff says most positively that he was given five (5) days; Prescott says ten (10) days. Because of the fact that Prescott and the defendant company kept negotiations going for a contract at a higher rate, the coverage went on to October 4, 1948, when the much higher rate was put on.

When notice was received, both Prescott and the plaintiff tried to find some company to write the plaintiff's business. After three weeks' search, they were still unsuccessful, and Prescott, acting as plaintiff's broker, and the Continental Casualty Company, through Emery & Kaufman, wrote a new policy at a higher premium, to wit: a premium of two and one-half times the original rate.

Mr. Prescott got the plaintiff's permission and approval for this arrangement at a conference with plaintiff at Chicot State Park. There was an exchange of telegrams between Mr. Cohen, of Emery & Kaufman, and the defendant's home office, which culminated in the defendant's consent to the arrangement on October 1, 1948.

On October 4, 1948, a new policy, WC–5197535, was issued, effective as of September 28, 1948. The endorsement to be signed by Rogers was sent by Emery &

Kaufman to Mr. Prescott, who in turn forwarded it to Rogers for his signature on October 5, 1948. Mr. Rogers did not immediately sign the endorsement and delayed returning it to Prescott until October 14, 1948, and on October 15, 1948, Emery & Kaufman received it from Prescott. The endorsement was as follows:

"It is understood and agreed that the Employer of the policy to which this endorsement is attached, hereby acknowledges that he recognizes the rates charged in the premium are excess rates and is agreeable to paying same.

"Accepted by: [signed] Frank C. Rogers."

The insurance was terminated on March 1, 1949, by the plaintiff himself, who claimed that he was able to get coverage as of that date from the American Mutual Liability Insurance Company at the rate of $8.60 per $100 remuneration. Accordingly, a short rate premium was charged against the plaintiff's account.

Paragraph five of plaintiff's petition alleges:

"That the premium rate of $19.095 on Workmen's Compensation Insurance Policy No. WC–5197535 written by Continental Casualty Company, defendant herein, through its agents, was exorbitant, in excess of the manual rate, was an arbitrary rate arrived at without any basis whatsoever, and the said premium was not in accordance with the provisions of Act No. 195 of the Louisiana Legislature for the year 1948, commonly referred to as Louisiana Insurance Code."

Louisiana Act No. 195 of 1948, the Louisiana Insurance Code, LSA–RS 22:1 et seq., became effective on July 28, 1948. The workmen's compensation policy, which is the subject of this suit, was executed by defendant company on September 28, 1948, and is, therefore, subject to the provisions of the Act.

The record discloses that, after the issuance of the new policy at the rate of $19.095, no application was filed by defendant company with the Casualty & Surety Division of the Louisiana Insurance Rating Commission for approval of this rate.

The Southeastern Compensation Rating Bureau, Louisiana Branch, under date of October 11, 1948, almost a month after the policy had been issued, wrote to Emery & Kaufman, New Orleans, Louisiana, agents of the defendant company, calling their attention to the fact that the policy did not conform to the rates and/or rating plan filed by them on behalf of their company (Continental Casualty Company) and asked that they be advised how they arrived at the rate of $19.095 for code 7529 and 7538.

The above document, called "Compensation Policy Correction", should be read with the testimony of Mr. Clarence A. Cohen, who is the representative of defendant company in New Orleans:

"Subsequent to our receipt of this *violation* we received the endorsement signed by Mr. Rogers and put it through the Commission." (Italics ours).

The letter from Mr. S. Fred Hume, Assistant Secretary of Casualty & Surety Division, of Louisiana Insurance Rating Commission, dated November 30, 1948, addressed to Mrs. Helen Whitney, Manager, Southeastern Compensation Rating Bureau, New Orleans, Louisiana, states that the policy had been approved merely and solely upon an endorsement signed by the assured to the effect that he understood and agreed to the manner in which the policy was written.

Since the Louisiana Insurance Code was in effect at the time of the issuance of the policy, it becomes necessary to examine the Code in order to determine whether the policy was legally issued and whether the premium rates charged were also legal. Did this public body ever exercise in this case the legal discretion that the enabling constitution and the statute passed thereunder direct must be exercised? Was the dire situation of the insured brought about by the defendant company, the insurer, which induced him to sign and agree, permit the total absence of discretion by the public body?

The premium rate covering the classification of plaintiff was $7.718 as of September 28, 1948. This rate is referred to

in plaintiff's petition as manual rate and it is referred to in defendant's answer under third defense, sections (b) and (f) as the published rate of defendant company.

By the specific provisions of the Louisiana Insurance Code, the premium rates in existence were continued in effect until such time as the *Commission* should determine otherwise. La. Act No. 195 of 1948, § 30.20, LSA–RS 22:1420.

Was the allegedly illegal excessive rate approved by the Casualty & Surety Division of the Insurance Commission? The answer is found in the letter addressed by the defendant company to the attention of Mr. S. Fred Hume, Assistant Secretary of the Casualty & Surety Division of the Louisiana Insurance Commission, dated November 26, 1948, and in the letter of Mr. Hume in reply. The letter in reply is short:

"We are attaching your copy of the Compensation daily report with the advices we are approving the manner in which this policy is issued to expire September 28, 1949; *such approval based upon an endorsement signed by the assured to the effect he understands and agrees to the manner in which the policy is written.* (Italics ours).

The very principle which brought about the existence of regulation and the fixing of rates by the state is violated here. If the bare agreement and the coerced willingness of the insured make the contract legal, then we go back to the ancient days before the establishment of regulation for the public good and when gross excesses and injustices prevailed. Freedom of contract did not exist then, nor does it exist in the instant case.

█ No insurer should *make or issue* a contract or policy of insurance except in accordance with the Insurance Code. La. Act No. 195 of 1948.

Section 30.04 of the Insurance Code, LSA–RS 22:1404, dealing with making of rates, reads in part as follows:

"All rates shall be made in accordance with the following provisions:

"(a) Due consideration shall be given to past and prospective loss experience within and outside this State, to catastrophe hazards, if any, to a reasonable margin underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both countrywide and those specially applicable to this State, and to all other relevant factors within and outside this State.

"(b) *Rates shall not be excessive, inadequate or unfairly discriminatory.*

"(c) Rates for casualty insurance to which this Chapter applies shall also be subject to the following provisions:

"(1) The systems of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or groups of insurers to reflect the requirements of the operating methods of any such insurer or group with respect to any kind of insurance, or with respect to any subdivision or combination thereof for which subdivision or combination separate expense provisions are applicable.

"(2) Risks may be grouped by classifications for the establishment of rates and minimum premiums. Rates may be established on the basis of any classifications submitted by any insurer or group of insurers, provided such classifications are found to be reasonable. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. Such standards may measure any difference among risks that can be demonstrated to have a probable effect upon losses or expenses.

\*　　\*　　\*　　\*　　\*　　\*

"(e) Except to the extent necessary to meet the provisions of subsection (b) of this section, uniformity among insurers in any matters within the scope of this section is not required nonprohibited [nor prohibited]. Nothing in this Code shall be construed to prohibit any insurer from deviating upon proper approval under this Chapter from any rate established by a rating organization or the Commission,

provided the rate used is adequate, or to prevent any insurer upon proper approval under this Chapter by the proper division from issuing policies for periods of time and at rates approved by the Division; or from charging in addition to the premium a separate initial membership, policy or inspection fee or other similar charge.

"(f) The term 'rate' as used in this Chapter shall include, as the context may require, either the premium to be paid by or charged to the insured for insurance, including fees and charges referred to in subsection (e) of this Section, or the elements and factors forming the basis for the determination of the premium, including fees and charges referred to in subsection (e) of this Section."

Certain specific methods of computation for the purpose of arriving at an adequate and fair rate that was not discriminatory should be submitted by the insurance company to the Rating Bureau, and, in turn, the Rating Bureau should make a careful check of all of the items going into the computation of the rate before giving approval.

Section 30.10, LSA–RS 22:1410, provides for the method of deviation from the rates which were in existence at the time the Code went into effect. The procedure of this section was not followed in the instant case.

The evidence in the case clearly shows that the increase in the rates on this particular policy were not approved prior to its issuance, as required by Section 30.20 of the Code, and that the attempt by the insurance company to legalize the premiums was certainly not done in accordance with law.

Mr. A. P. White, Chairman of the Casualty & Surety Division testified that the supposed· approval had been given by Mr. Hume, Assistant Secretary of the Division, but he admitted that no component parts going to make up rates were contained in the file on the particular case.

Mr. White stated that no data was submitted to his office in addition to the agreement of the assured to pay the increased premium of $19.095 and ·that the loss record of this claim was not submitted to his Division and that his office had no information whatever about the record on the policy that had been cancelled, and further that the Commission held no meeting to approve the rate and that its alleged approval was solely on the supposed authority of Mr. Hume the Assistant Secretary.

■ The defendant company clearly violated the provisions of the Insurance Code when it issued a policy for two and one-half times its existing rate without first securing the permission of the Commission. The subsequent attempt made by them to justify their action by seeking the agreement of the insured under the circumstances was of no avail.

The defendant company had the time to secure prior approval of the rates, since the first action taken by the Commission to cancel the existing policy was dated September 8, 1948, and the policy was not written until October 4, almost a month thereafter.

If attempts had been made to secure prior permission, they could never have met with legal success without submitting to the Board the reason, or reasons, for charging the rates and submitting the component parts that would justify an increase.

The Casualty and Rating Division of the Louisiana Insurance Commission was established for the protection of policyholders and the law made specific requirements that should be followed by them before approving any increase, which requirements are the submission of component parts that go into the making of a rate. The rate of two and one-half times the then existing rate was simply pulled out of thin air by dependant company, without any justification whatsoever, nor with any substantiation by necessary information and data that would justify the charging of such an exorbitant rate.

■ Defendant contends that plaintiff was tardy in making claim for the excessive premium rates in that he did not raise any objection to its validity or make any claim against it until the policy had been cancelled by the plaintiff. Plaintiff was unaware of the illegality of the premium

charged on the policy, as he had not received any information that the policy had been submitted to the Casualty and Rating Bureau for approval. Plaintiff only secured this information when he actually procured coverage from the American Mutual Liability Insurance Company at the rate of $8.60 per hundred dollars remuneration in lieu of the rate he had been paying to defendant of $19.095 per hundred dollars remuneration.

An examination of Article 11 of the Louisiana Revised Civil Code shows that, whilst individuals may renounce the law which has been established in their favor, this renunciation may be done only in cases where the renunciation *does not affect the rights of others*.

In this case the rights of others were very materially affected by the excessive premium charged. A portion of the insurance was refunded to plaintiff in contracts with the Gulf States Utilities Company and others amounting to the sum of $4,447.53. The rights of others were involved when the Gulf States Utilities Company and others were compelled, because of this increase in premium rates, to refund the amount to plaintiff, because the contracts were on a cost-plus basis.

H. H. Prescott & Sons was an old established insurance firm in the city of Shreveport and had written a number of policies for plaintiff and had also written the insurance requirements of his father before him. Plaintiff signed this endorsement when he considered it to be a legally consummated policy. Plaintiff, Rogers, did not know that defendant company had to submit this matter to the Casualty and Rating Bureau for approval. On the part of Rogers the endorsement was not a request for approval.

### Jurisdiction

It is contended that this Court is without jurisdiction to try this matter for the reason that the District Court for the Parish of East Baton Rouge, Louisiana, is the only tribunal before which this matter should be taken.

We have read all of Chapter 29 of the Insurance Code, LSA–RS 22:1351 et seq.; and, in particular, Sections 30.18, 29.10, 30.08(d) and 30.12(b), LSA–RS 22:1418, 22:1360, 22:1408, subd. D, 22:1412, subd. B. There never was a hearing of any kind on the fixing of the instant rate by any department or officer of the Louisiana Insurance Rating Commission; or, in particular, by the Casualty and Surety Division thereof. Such being the case, the processes for review and the administrative remedies indicated by the Code are inapplicable. The Secretary of State never exercised any discretion in the matter, nor was there any hearing to be had by him, because the Casualty and Surety Division never exercised its discretion in this case. Rogers was compelled to a private agreement against the public interest, wherein third parties were affected.

■ Our conclusion is that the provisions of the above Sections of the Code are inapplicable, both as they indicate that administrative remedies must be exhausted before right to enter court be had and in the case that court be entered that the only court available is the District Court in and for the Parish of East Baton Rouge.

The jurisdiction here is through diversity of citizenship and involving an amount over $3000.00, over a personal action for the return of money illegally overpaid under contract.

■ It is clear that the plaintiff was entitled to the benefits of the insurance at a much lesser charge. The basis of the suit is for an overcharge. Article 2984 of the Louisiana Revised Civil Code is not applicable.

### Prescription

■ On the subject of prescription, we should consider the issue as if in the case that the plaintiff would not have paid the premiums to the defendant. In that event, defendant would have had ten years within which to sue for the collection. In McElroy v. Parry, La.App., 152 So. 793, the Court held that the policy, when issued, constituted a contract between the insurer and the insured and that the plea of prescription of three years filed therein was not applicable and that the matter was governed by the prescription of ten years.

We believe we have here a personal action prescriptible in ten years.

Let judgment be duly presented for signature in keeping with the above opinon.